**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  No.  CR-03-2112 MV

JOSE LUIS BARRAZA and
JUAN ANTONIO BARRAZA,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on a referral by Magistrate Judge Leslie C. Smith with regard to an alleged conflict of interest created by the joint representation by Francisco Macias of brothers Jose Luis Barraza ("Jose") and Juan Antonio Barraza ("Juan").  The Court, having considered the relevant law and being otherwise fully informed, ruled at the hearing that an actual conflict of interest exists and that, accordingly, Mr. Macias will be relieved of his duties and appointed counsel will be permitted to continue to represent their clients.  The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

**BACKGROUND**

Pursuant to a superseding indictment filed on December 17, 2003, Jose and Juan, in addition to ten other individuals, are charged with continuing a criminal enterprise and conspiracy to possess with intent to distribute 1,000 kilograms and more of marijuana in violation of 21 U.S.C. §848(a) and §846.  The Court appointed Bernadette Sedillo to represent Jose and appointed Mario Esparza to represent Juan.  On December 3, 2003, Mr. Macias entered his appearance to represent both Jose and Juan in this action.

On December 3, 2003, Magistrate Judge Smith held a Rule 44 hearing to determine whether a conflict of interest is created by Mr. Macias's joint representation of Jose and Juan. Judge Smith deferred his ruling and entered an Order dated December 3, 2003 directing Ms. Sedillo and Mr. Esparza, outside of the presence of Mr. Macias, to speak with their respective clients and review the consequences of joint representation pursuant to Rule 44.

On December 15, 2003, Magistrate Judge Smith continued the Rule 44 hearing. At the conclusion of the hearing, Magistrate Judge Smith stated that he would review a letter submitted that day by the government setting forth its position on the issue of the conflict of interest and that he then would send a recommendation to this Court for a ruling.

Also on December 15, 2003, Juan and Jose each signed a waiver of right to have separate counsel. Each waiver recites that Defendant has been advised by the Court of his right under Rule 44 to have a separate attorney, that he does not believe that an actual conflict of interest exists as a result of Mr. Macias's joint representation and that he waives his right to separate counsel despite any potential conflicts of interest that might arise from Mr. Macias's joint representation.

On Magistrate Judge Smith's referral, this Court held a hearing on December 19, 2003 attended by the government attorneys, Mr. Macias, Ms. Sedillo, Mr. Esparza, Juan and Jose. After hearing from the parties, the Court conducted *in camera* discussions with Juan and Jose separately. At the conclusion of the hearing and the interviews, as set forth below, the Court found that an actual conflict of interest exists and that, despite the waivers signed by Juan and Jose, Mr. Macias will be relieved of his duties and appointed counsel will be permitted to continue to represent their clients.

## STANDARD

Under the Sixth Amendment, a defendant in a criminal case is entitled to the effective assistance of competent counsel. *See United States v. Burney*, 756 F.2d 787, 790 (10th Cir. 1985). The right to effective assistance "includes the right to counsel free from conflicts of interest." *Id.* at 790. Multiple representation of co-defendants is not a *per se* violation of the Sixth Amendment. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). However, such representation "should be undertaken very cautiously because of the great potential for conflicts of interest." *United States v. Dressel*, 742 F.2d 1256, 1257-58 (10th Cir. 1984). In *Holloway*, the Supreme Court explained:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

435 U.S. at 489-90.

Accordingly, "a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat v. United States*, 486 U.S. 153, 160 (1988). Rule 44(c) of the Federal Rules of Criminal Procedure provides a procedure for protecting a defendant's Sixth Amendment right to effective assistance where two or more defendants have been jointly charged or are to be jointly tried, and are represented by the same counsel. Specifically, Rule 44(c)(2) provides:

> [T]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

-3-

Thus, under Rule 44(c), the Court must hold a hearing to determine whether there is the possibility of an actual conflict of interest arising out of the joint representation.  An actual conflict of interest exists if "a specific and seemingly valid or genuine alternative strategy [is] available to defense counsel, but it [is] inherently in conflict with his duties to others or to his own personal interests."  *United States v. Migliaccio*, 34 F.3d 1517, 1526 (10th Cir. 1994).  Thus, the Court is directed "to inquire of the defendants and counsel concerning the possibility of a conflict of interest developing."  *Dressel*, 742 F.2d at 1258.

The specific measures to be taken by the Court upon a finding of a potential conflict of interest are left to the Court's discretion.  *Id.*  One such measure, which is set forth in the Notes of the Advisory Committee,  is an order that the defendants be represented separately in subsequent proceedings in the case. *See Wheat*, 486 U.S. at 161.  Another measure within the Court's discretion is "to obtain a knowing, intelligent and voluntary waiver of the right to separate representation."  *Id.*

Under circumstances where an actual conflict exists and is brought to the Court's attention, the Court's participation is essential to a valid waiver.  *See Migliaccio*, 34 F.2d at 1526.  According, the Tenth Circuit has held that:

> [i]n order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel.

*Id.* at 1527 (citation omitted).  The Court also is directed to "personally address each of the defendants, informing them of the possible hazards of being represented by a single attorney and of their right to separate representation."  *Dressel*, 742 U.S. at 1258.  Moreover, the "defendant must be free to ask the court questions regarding the nature and consequences of his legal representation."

-4-

*Id.* These steps are consistent with the standard for measuring an effective waiver of the Sixth Amendment right to counsel. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is . . . an intentional relinquishment or abandonment of a known right or privilege"); *Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

The Court has the discretion not to accept a defendant's waiver of separate counsel. In the event that the Court justifiably finds an actual conflict of interest, the Court "may decline a proffer of a waiver, and insist that defendants be separately represented." *Wheat*, 486 U.S. at 162. The district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. In making this determination, the Court may consider not only the interest of the criminal defendant before it, but also its own "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160.

For example, in *Wheat*, the petitioner, along with numerous co-defendants, was charged with participating in a drug distribution conspiracy. At the time of the trial, the district court was considering a co-defendant's offer to plead guilty to certain charges, and had already accepted another co-defendant's guilty plea to one count. Both of those co-defendants were represented by one attorney. Two days before trial was to commence, the petitioner moved for the substitution of his co-defendants' attorney as his counsel as well. Despite the petitioner's assertion of his Sixth

Amendment right to the counsel of his choice, and his willingness to waive the right to conflict-free counsel, the district court denied the substitution motion on the basis of irreconcilable and unwaiveable conflicts of interest for the attorney created by the likelihood that the petitioner would be called to testify at any subsequent trial of one of his co-defendants and that the other co-defendant would testify at the petitioner's trial. The Tenth Circuit affirmed. The Supreme Court also affirmed, holding that the district court did not err in declining the petitioner's waiver of his right to conflict-free counsel and in refusing to permit his proposed substitution of attorney. The Supreme Court explained that, while courts must recognize the Sixth Amendment presumption in favor of counsel of choice, that presumption may be overcome not only by a demonstration of actual conflict but also by a showing of a serious potential for conflict. *See Id.* at 163.

Similarly, in *United States v. Martin*, 965 F.2d 839 (10th Cir. 1992), the defendant was convicted of conspiracy to possess with intent to distribute marijuana. The defendant filed a motion for a new trial, claiming ineffective assistance of counsel due to a conflict of interest. Following an evidentiary hearing, the district court determined that counsel's dual representation of the defendant and his co-defendant created an actual conflict of interest which affected counsel's representation of the defendant. The district court vacated the defendant's conviction and granted him a new trial. The government appealed, and the Tenth Circuit affirmed, stating that the defendant:

> presented the classic conflict situation in which, in order to reduce the degree of his own culpability, he would have to testify in contravention of his co-defendants' theory of defense. Defendant claims that he had less culpability than the other defendants because he withdrew from the conspiracy. He further contends that [his attorney] vehemently opposed his desire to testify because to do so would have negated the remaining defendants' theory of defense that no conspiracy existed. Defendant maintain[ed] that [his attorney] did not inform him that this created a conflict, or that he could exact his right to have separate counsel.

-6-

*Id.* at 842.  The Tenth Circuit found that there was an actual conflict of interest because the record showed that the defendant may have been a less culpable participant in the illegal activity and that, had the defendant testified, he may have been able to exculpate himself to some degree.

## DISCUSSION

Based on the hearings held by Magistrate Judge Smith and the hearing and *in camera* discussions held by this Court, the Court concludes that there is an actual conflict of interest arising out of Mr. Macias's joint representation of Juan and Jose.  In its discretion, this Court finds that, under the circumstances of this case, Defendants' waivers of the right to separate counsel are an insufficient measure to protect against this actual conflict of interest and that the proper course is to order that Juan and Jose be represented by separate counsel.  The circumstances which lead the Court to this conclusion are set forth herein.

A.      Representation of Co-Conspirators With Different Levels of Culpability

As the defendants in *Wheat* and *Martin*, Juan and Jose are charged with participating in a conspiracy involving possession with intent to distribute illegal drugs.  *Wheat* and *Martin* illustrate the conflict created by the joint representation of co-conspirators whose levels of culpability are different.  Specifically, *Martin* describes the "classic conflict situation" created where one defendant, in order to receive a reduction in role for his lesser culpability, would have to testify in contravention of his more culpable co-defendant's theory of defense.  *See Martin*, 965 F.2d at 842.

Based upon the discovery produced by the government thus far, it appears that the level of evidence against Juan and Jose is not the same and that, accordingly, the "classic conflict situation" described in *Martin* is present here.  The evidence makes it appear that Juan may have been a less culpable participant in the allegedly illegal activity than Jose.  Accordingly, Juan might qualify for a

-7-

minimal role reduction while Jose might not. The difference in the levels of culpability and involvement thus would put counsel in the position of having to argue in favor of Juan and against Jose in order secure for Juan an acquittal or, in the event of a conviction, the lowest possible sentence. In addition, throughout the course of the trial, the difference in the level of each brother's involvement might require counsel to make one client look better or worse than the other client. This would put Mr. Macias in the untenable position of hurting one client by virtue of providing zealous, effective assistance to the other client. Accordingly, Mr. Macias's joint representation of Juan and Jose, co-defendants with different levels of involvement in the alleged conspiracy, creates an actual and unresolvable conflict of interest.

      B.     <u>Representation of a Co-Defendant in Another Action</u>

An individual named Raul Espinoza is a defendant in a state criminal drug case currently pending in Texas. Pursuant to the superseding indictment, Mr. Espinoza is also a co-defendant in the instant case. Mr. Macias is counsel of record for Mr. Espinoza in the state drug case.

Because he represents Mr. Espinoza in the separate state action, Mr. Macias has confidential information about Mr. Espinoza to which he otherwise would not have access in the normal course of his representation of two of Mr. Espinoza's co-defendants. Mr. Macias is under a continuing ethical obligation to Mr. Espinoza to maintain the confidentiality of his attorney-client communications. Accordingly, although the confidential information in Mr. Macias's possession well might become relevant in defending Juan and Jose in this case, Mr. Macias will not be able to use it in their defense. Mr. Macias's continuing allegiance to Mr. Espinoza similarly prohibits him from arguing in the instant case that Mr. Espinoza is more culpable or more involved in the alleged conspiracy than are his clients, Juan and Jose. This is especially troubling given that the government's

outline of the evidence thus far demonstrates that there is already much more evidence against Mr. Espinoza than there is against Jose or Juan.  Finally, as Jose and Juan appear not to know Mr. Espinoza, Mr. Macias would be in the precarious position of having to distance Mr. Espinoza as much as possible from Jose and Juan.  Accordingly, because Mr. Espinoza is a co-defendant in the alleged drug conspiracy being prosecuted herein, Mr. Macias's representation of Mr. Espinoza in a separate state drug action creates an actual and unresolvable conflict of interest.

          C.      <u>Evidence Regarding An Employee of Mr. Macias</u>

At the hearing, the government explained that discovery disclosed on December 18, 2003 includes a lease document which a co-defendant in this case, Jose Diaz, produced in order to reclaim from federal agents a tractor-trailer truck owned by him that had been seized on May 18, 2003 containing approximately 3,400 pounds of marijuana.  Mr. Diaz produced the lease document in order to establish that he had leased the truck to another individual and that it was this other individual who was responsible for the marijuana found in the truck.  The lease document contains a notary stamp which belongs to Lorena Garcia, a legal assistant in Mr. Macias's office.  The government advised the Court that it intends to use the lease document as an exhibit against Defendants.  Mr. Macias advised the Court that the signature on the lease document is not Ms. Garcia's, that his office was not involved in preparing the lease and that his office never prepares leases or contracts of any kind.

Regardless of whether Ms. Garcia was involved in the preparation of the lease, the relevant fact is that there is a lease, containing her notary stamp and involving a truck in evidence in this case, which will be introduced against Defendants.  Even if it is proven that the only wrongdoing was on the part of Mr. Diaz and Ms. Garcia is not implicated at all, Mr. Macias must explain the lack of

connection between his office and the lease.  Thus, the introduction of the lease will require Mr. Macias to explain to the jury, as he did to this Court, that his office did not prepare the lease agreement at issue and that his employee does not know how her notary stamp appeared on the document.  There is a very real danger that the jury might conclude that Mr. Macias is not credible and that, in fact, his office may have been involved in the preparation of documents which were allegedly used in furtherance of the conspiracy charged in this case.  In that event, the jury also might not believe his statements on behalf of his clients, Juan and Jose.  Thus, at best, Mr. Macias's testimony would interfere and prove to be a distraction, while at worst, Mr. Macias's testimony could nullify the statements he makes on behalf of his clients, Juan and Jose.  The evidence in this case thus places Mr. Macias in the role of witness rather than counsel.  Moreover, the lease purports to link Juan and Jose to Mr. Diaz through Mr. Macias's employee.  For these reasons, the Court finds that the lease agreement containing Mr. Macias's employee's notary stamp, which the government intends to introduce against Defendants, creates an actual and unresolvable conflict of interest.

## CONCLUSION

Based on the circumstances outlined above, Mr. Macias's joint representation of Juan and Jose creates an actual and unresolvable conflict of interest.  This conflict of interest fatally impairs Mr. Macias's ability to represent his clients effectively. Despite the waiver of the right to separate counsel signed by each brother, the Court finds that Mr. Macias's continuing representation would improperly compromise Juan's and Jose's Sixth Amendment right to effective assistance of counsel. Accordingly, the Court finds that the only effective remedy is to order that Juan and Jose be represented by separate counsel.

-10-

**IT IS THEREFORE ORDERED** that Mr. Macias is relieved of his duties and appointed counsel is permitted to continue to represent their clients.  Jose and Juan are each entitled to retain another attorney so long as that attorney represents only one defendant in this case.  Until such time as Jose retains another attorney, he continues to have the representation of Ms. Sedillo.  Until such time as Juan retains another attorney, he continues to have the representation of Mr. Esparza.

**DATED** this 7th day of January, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Kenneth Gonzales
Greg Wormuth

Attorneys for Defendant Jose Luis Barraza:
Bernadette Sedillo
Francisco Macias

Attorneys for Defendant Juan Antonio Barraza:
Mario Esparza
Francisco Macias