IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                        No. CR-03-2112 MV

JORGE TORRES-LARANEGA, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Edgar Lopez-Hernandez's Motion to Sever Defendants **[Doc. No. 208]**, filed April 19, 2004, Defendant Jose Francisco Diaz's Notice of Joinder **[Doc. No. 323]**, filed October 5, 2004 and Defendant Jorge Torres-Laranega's Notice of Joining Codefendant Edgar Lopez-Hernandez' pending motions **[Doc. No. 340]**, filed October 6, 2004. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Lopez-Hernandez's Motion to Sever Defendants is well taken and will be **GRANTED**.

## BACKGROUND

Lopez-Hernandez is charged in Count II of the Fourth Superseding Indictment with conspiracy to possess with intent to distribute 1,000 kilograms and more of a mixture and substance containing a detectable amount of marijuana within 1,000 feet of a school and within 1,000 feet of a truck stop. In Count III, Defendant Edgar Lopez is charged along with codefendant Jorge Torres-Laranega with possession with intent to distribute 1,000 kilograms and more of a mixture and substance containing a detectable amount of marijuana and aiding and abetting. Although Lopez-Hernandez is not charged in Count I, he is listed as an individual whom Torres-Laranega organized,

supervised and managed during the course of a continuing criminal enterprise which is alleged to have continued from June 8, 2002 to November 19, 2003.[1]  Also in the Fourth Superseding Indictment under "Sentencing Factors," Lopez-Hernandez is charged as being an organizer, leader, manager or supervisor in the criminal activity described in Count II.

On April 19, 2004, Lopez-Hernandez filed the instant motion.  The government's reply followed on May 19, 2004.  The Court held a hearing on October 7, 2004.  At the conclusion of the hearing, the Court took the motion under advisement.  On November 3, 2004, Lopez-Hernandez filed a supplement to the motion.

## DISCUSSION

### I. Severance of Defendants

Rule 8(b) of the Federal Rules of Criminal Procedure states that two or more defendants may be charged in the same indictment or information "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The Supreme Court has made clear that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1992).  Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id.* (citation omitted).  Accordingly, "[c]ourts generally adhere to the principle that 'those indicted together, especially co-conspirators, should be tried together.'" *United*

---

[1] As part of the continuing criminal enterprise, Count I alleges the following: (1) possession with intent to distribute approximately 1,417 net kilograms of marijuana on May 18, 2003 at the Las Cruces U.S. Border Patrol checkpoint; (2) possession with intent to distribute 777 net kilograms of marijuana in the vicinity of Gary, Indiana on July 14, 2003; (3) possession with intent to distribute 523 net kilograms of marijuana at 405 Cinecue Way, El Paso, Texas on August 7, 2003; and (4) possession with intent to distribute 2,340 net kilograms of marijuana in a tractor trailer parked in the 1200 block of Tower Trail Lane, El Paso, Texas on September 12, 2003.

*States v. Peveto*, 881 F.2d 844, 857 n.16 (10th Cir.) (citation omitted), *cert. denied sub nom.*, *Hines v. United States*, 493 U.S. 943 (1989).

Rule 14(a) of the Federal Rules of Criminal Procedure, however, recognizes that joinder, even where proper under Rule 8(b), may be prejudicial. Thus, Rule 14(a) provides for relief from prejudicial joinder as follows:

> If the joinder of offenses or defendants in an indictment, an information or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Under Rule 14, the decision whether to grant a motion to sever is within the trial court's sound discretion. *See United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In making its determination, the trial court must weigh the potential prejudice to the defendant against considerations of judicial economy and efficiency. *See id.* "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39.

A defendant seeking severance "must bear a heavy burden of showing real prejudice to his case." *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.), *cert. denied*, 447 U.S. 905 (1980). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against a co-defendant than that against the moving party is sufficient to warrant severance." *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997) (citation omitted).

In *Zafiro*, the Supreme Court held that severance should be granted under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The Supreme Court provided examples of when such a risk might occur:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

*Id.* (citations omitted). While noting that, where the risk of prejudice is high, the district court is more likely to determine that separate trials are necessary, the Supreme Court stated that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

### A.  Need for Codefendant's Testimony

Severance may be appropriate where a defendant claims that he or she needs a codefendant's testimony. *See Zafiro*, 506 U.S. at 539 (holding that a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial). The Tenth Circuit has held that the court must consider seven factors in order to determine whether a severance is appropriate on this basis:

> 1) the likelihood that the codefendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the codefendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996).

In the instant case, Lopez-Hernandez argues that his involvement in the alleged conspiracy was limited to one or two isolated drug transactions and that his role in those transactions was of a simple "worker bee." Nonetheless, Lopez-Hernandez is charged with conspiracy in Count II of the Fourth Superseding Indictment, is named in Count I as an individual whom codefendant Torres-Laranega managed during the course of a seventeen-month, continuing criminal enterprise that included at least four separate drug transactions, is charged with Conspiracy in Count III and is charged with being an organizer, leader, manager or supervisor of the criminal transaction alleged in Count II.

At the motion hearing, counsel for Lopez-Hernandez, Joe Romero, represented that codefendant Torres-Laranega made exculpatory statements about Lopez-Hernandez during his FBI interview on November 19, 2003. Specifically, Mr. Romero stated that Torres-Laranega told the agents that Lopez-Hernandez was involved in only one drug transaction and that, in connection with that transaction, Lopez-Hernandez's role was limited to loading boxes onto the back of a trailer and arranging for the loading to occur at a radiator shop. Mr. Romero concluded that, if Torres-Laranega were to testify to the information that he provided in his statement to the FBI, his testimony would be exculpatory in that it would establish that Lopez-Hernandez was involved in only one transaction and that his role in that transaction was not that of an organizer, leader, manager or supervisor. According to Mr. Romero, at a joint trial, Torres-Laranega likely would invoke his Fifth Amendment right and refuse to testify on Lopez-Hernandez's behalf. For this reason, Mr. Romero argued, severance of Lopez-Hernandez is warranted.

At the motion hearing, counsel for Torres-Laranega, Marcia Milner, confirmed the statements made by Mr. Romero. Specifically, Ms. Milner represented that she had spoken with her client and

that he had indicated that he would be willing to testify on Lopez-Hernandez's behalf at a separate trial. Ms. Milner stated that the only condition would be that Lopez-Hernandez's trial would have to occur after the conclusion of Torres-Laranega's trial and sentencing.

At the motion hearing, the government did not dispute that severance of Lopez-Hernandez would be proper to allow for Torres-Laranega to testify on Lopez-Hernandez's behalf at a separate trial. The government, however, stated that the proper course would have been for Lopez-Hernandez to produce a properly authenticated affidavit sworn to by Torres-Laranega indicating what he would say and that he was willing to testify at a separate trial. At that point, Mr. Romero stated that he had prepared such an affidavit for signature by Torres-Laranega, had forwarded it to Ms. Milner and was waiting to receive a signed original. The Court granted Mr. Romero leave to file the affidavit. Thereafter, on November 3, 2004, Mr. Romero filed the supplement to his motion, attaching as Exhibit A an affidavit sworn to by Torres-Laranega on October 3, 2004.

Torres-Laranega's affidavit states that he does not intend to waive his Fifth Amendment rights. Further, the affidavit states that, in the event that he is tried separate from and before the trial of Lopez-Hernadez, he intends to provide "exculpatory testimony as to co-defendant Edgar Lopez-Hernandez regarding the charges pending against him." In addition, the affidavit states that the summary statement prepared by the FBI based on his November 19, 2003 interview "did not include the exculpatory information [he] provided the FBI regarding co-defendant Edgar Lopez-Hernandez."

An evaluation of the seven factors set forth in *Martinez* establishes that a severance of Lopez-Hernandez is warranted. First, Torres-Laranega's affidavit establishes a strong likelihood that he in fact will testify at Lopez-Hernandez's trial. The waiver of his Fifth Amendment rights need not be an issue, as Lopez-Hernandez can be tried after the conclusion of the trial of Torres-Laranega.

Second, Torres-Laranega's testimony would be significant, as it would tend to prove Lopez-Hernandez's contention that he was involved in only one transaction and that he had a minimal role in that transaction. Third, such testimony would be exculpatory and might provide reasonable doubt as to the charge that Lopez-Hernandez was an organizer, leader, manager or supervisor in one of the alleged drug transactions. Fourth, the government has not provided any basis for the Court to believe that Torres-Laranega's testimony is likely to be impeached. Fifth, Lopez-Hernandez could be prejudiced by the absence of Torres-Laranega's testimony. Sixth, the Court does not find that the effect of a severance on judicial administration and economy would be significant. Seventh, Lopez-Hernandez filed his motion before the deadline set by the Court.

## **CONCLUSION**

Lopez-Hernandez sufficiently has shown the necessity of codefendant Torres-Laranega's testimony for his defense. In order to allow for Torres-Laranega to testify on behalf of Lopez-Hernandez, Lopez-Hernandez must be tried in a trial separate from and after the trial and sentencing of Torres-Laranaga. Accordingly, severance of Lopez-Hernandez is warranted.

**IT IS THEREFORE ORDERED** that Defendant Lopez-Hernandez's Motion to Sever Defendants **[Doc. No. 208]** is hereby **GRANTED**.

Dated this 1st day of December, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Ken Gonzales
John G. Crews, III

Attorney for Defendant Jose Francisco Diaz
Anthony White
Attorney for Defendant Edgar Lopez-Hernandez
Joe M. Romero
Attorney for Defendant Jessica Mendoza
Howard Anderson
Attorney for Defendant Jorge Torres-Laranega
Marcia Milner
Attorney for Martin Mendivil
Ken Del Valle